EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff-Appel-lant,

v.

The BAILEY COMPANY, INC., Defendant-Appellee.

No. 76–1045.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 15, 1977.

Decided Sept. 20, 1977.

Rehearing Denied Oct. 17, 1977.

Abner W. Sibal, Vincent Blackwood, Gen. Counsel, Mollie W. Neal, E.E.O.C., Washington, D. C., Milton C. Branch, Regional Atty., Atlanta Regional Litigation Center, E.E.O.C., Atlanta, Ga., for plaintiff-appellant.

William N. Ozier, Bass, Berry & Sims, Nashville, Tenn., for defendant-appellee.

Before WEICK, PECK and ENGEL, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiff-Appellant Equal Employment Opportunity Commission (EEOC) brought suit under Title VII of the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. §§ 2000e, *et seq.*, alleging that defendant-appellee, The Bailey Company, Inc., had engaged in certain unlawful employment practices, in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a), with respect to blacks and Seventh Day Adventists. In the district court the EEOC sought to have appellee enjoined from engaging in such unlawful employment practices and to have appellee ordered to institute affirmative action programs to provide equal employment opportunities for blacks and Seventh Day Adventists. Appellee denied that it had engaged in any illegal discriminatory employment practices and asserted further that the allegations of racial and religious discrimination were not properly before the district court because the private party's charge of discrimination, which had triggered the EEOC investigation of appellee's employment practices, had been filed by a white female alleging sex discrimination against women and race discrimination against black women.

The district court agreed with appellee that the EEOC could not bring a lawsuit alleging racial and religious discrimination based on a charge filed by a white woman because the woman did not have standing to charge racial and religious discrimination. The district court dismissed the suit for lack of jurisdiction and awarded attorneys' fees to appellee.

We affirm the portion of the district court order that dismissed for lack of jurisdiction the allegations of religious discrimination. We reverse the portion of the district court order dismissing the allegations of racial discrimination and remand to the district court that part of the case for consideration on the merits. We also reverse the district court award of attorneys' fees to appellee and remand that part of the case for reconsideration in light of the legal principles set forth in this opinion.

I

Appellee company is a Tennessee corporation engaging in the sale, service, and rent-

al of forklift trucks and other allied material handling equipment. Appellee employed approximately 100 people at the time of the EEOC investigation, of whom fifty-two worked at appellee's principal office and place of business in Nashville, Tennessee, and the remainder in the company's several branch offices. The EEOC's complaint and proof at trial focused solely on the employment practices at the Nashville main office.

The initial charge of discrimination lodged with the EEOC against appellee was filed October 19, 1970, by Mrs. Cecile Wade, a white female working in appellee's Accounting Department. Mrs. Wade charged that she had worked at the appellee company for almost two years, that she had experience and education in bookkeeping, that a man with less education and less experience than she was recently hired and placed in a supervisory position over her at a greater rate of pay, and that she was discharged because of her plans to file a charge of sex discrimination with the EEOC. On January 31, 1972, Mrs. Wade amended her charge to add allegations that the company in general failed "to promote females to supervisory positions because of their sex," that the company failed "to pay equally qualified females the same wages as males," and that the company failed "to recruit and hire Negro females because of their race."

The EEOC investigated the racial and sexual composition of appellee's work force, and on November 13, 1972, the Area Director for the EEOC issued a determination that appellee was not guilty of sex discrimination against Mrs. Wade. The Area Director found that Mrs. Wade was not offered the promotion, which she had complained in her charge about not receiving, because she had an unsatisfactory working relationship with her co-workers and that no evidence supported her allegations as to discharge and discriminatory wages.

The Area Director further determined, however, that there was reasonable cause to believe that appellee had failed to recruit and hire blacks because of their race. The Area Director referred first, to the statistical disparity between the percentage of blacks comprising the Nashville population, about 20% according to the U.S. Bureau of Census figures, and the percentage of blacks comprising the work force at appellee company, about 4% according to the work force data submitted to the EEOC by appellee, and second, to the apparent fact that the blacks who were currently working with appellee held low paying janitorial, utility porter, and utility shop employee positions. In addition, the Area Director determined that appellee company admitted that it had failed to hire a qualified male applicant because of his religion.

Pursuant to Title VII procedures, the EEOC attempted conciliation, but on April 4, 1974, notified appellee that such conciliation efforts were unsuccessful. On November 27, 1974, the EEOC filed this lawsuit. The EEOC complained that appellee had engaged in unlawful employment practices at its Nashville office in violation of § 703(a) of Title VII (1) by failing or refusing to hire blacks on an equal basis with whites because of race; (2) by maintaining departments and job classifications that have been segregated on the basis of race; (3) by otherwise limiting, segregating, and classifying employees in ways that have deprived blacks of employment opportunities; (4) by failing or refusing to hire Seventh Day Adventists on the basis of their religion; and (5) by failing or refusing to take affirmative action to eliminate such alleged discriminatory policies and practices.

Trial was held June 24, 1975. At trial, to prove that appellee's employment practices resulted in racial discrimination, the EEOC took testimony from the principal appellee officers and submitted exhibits during that testimony.

James Bailey, appellee's President, described the company structure. Appellee was divided into separate departments for Sales, Parts, Service, and Accounting, with each department responsible for its own hiring. According to Lurline Yarchever,

appellee's Vice President-Finance and head of the Accounting Department, applicants for positions with appellee were received through newspaper advertisements, through listings with the State of Tennessee, private employment agencies and vocational schools, and through word-of-mouth. Mrs. Yarchever testified that a high school education was a qualification for most jobs with appellee, but she added that experience outweighed the value of a high school diploma and that the company had deviated from stated qualifications in hiring particular individuals. As to one category of employment, though, Gordon Morrow, appellee Vice President-Marketing and head of the Sales Department, stated that salesmen should have an engineering degree or engineering experience in order to represent competently appellee's product line.

Further examination of Mrs. Yarchever and exhibits presented with the examination showed the following. At the time of trial, two blacks were working at appellee company, one as a truckdriver and the other as a parts clerk. Previously, blacks had been employed only as janitors. No black had ever worked at appellee as an executive, a manager, a salesman, or a mechanic. No black had ever worked in the white collar Sales and Accounting Departments. Blacks had only worked in the blue collar Parts and Service Departments.

EEOC examination of Mrs. Yarchever at trial showed that these facts, suggesting race discrimination, were developed by the EEOC in its investigation of appellee by requests directed to Mrs. Yarchever to go through appellee employment records, which listed past and present employees, and to indicate whether such employee was white or black. Because appellee's regular employment records did not indicate race, Mrs. Yarchever had to comply with the request by using her memory of appellee's employees, and she did so in an effort to co-operate with the EEOC.

Mrs. Yarchever and Mr. Morrow testified, however, as to facts negating the possibility of race discrimination by appellee. They stated that in the Accounting and Sales Departments no black had ever applied and that there was a small turnover in personnel. Mr. Bailey stated that appellee never had any black applicants for any jobs except as truckdrivers and janitors and that appellee had difficulty getting mechanics of any race. Mrs. Yarchever further insisted that, although appellee had no affirmative action program, appellee's policy was to hire blacks if there was an opening.

The EEOC sought to prove individual cases of race discrimination with the testimony of five black men who had been or were then employees of appellee. Of course, appellee denied that these particular cases showed race discrimination.

The first black witness, Wilbur James Crowder, had been a truckdriver for over two years of the five years he had worked at appellee. He had a tenth grade education and no specialized training. Crowder received the truckdriver position by promotion within the company, replacing two whites who had previously held the position jointly, and stated that he thought he had been treated fairly at appellee. There was a conflict in the testimony as to whether Crowder "had to outwork" or "did outwork" the two whites for the truckdriver job. Although the EEOC elicited testimony to show that Crowder had never been told of job vacancies at appellee, the EEOC did not show that anyone at appellee received notice of job vacancies.

Willie Gene Fischer had been briefly employed as a janitor at appellee in 1974, even though he had prior experience as a truckdriver, crane operator, caterpillar operator, and mechanic. Fischer had applied for the janitorial job in response to a newspaper advertisement, did not apply for any other job at appellee, and left after two weeks for a better job installing air conditioners.

Isaac Cathey was one of four black employees at appellee in the spring of 1974. Cathey had an eleventh grade education and experience as a truckdriver and mail carrier. While employed by appellee as a

janitor, Cathey asked about a vacancy in the Parts Department. He was informed that the job paid less and was given instead a pay raise and an upgrade in job classification. Cathey did not press the issue and left appellee after three months to return to work with the State of Tennessee.

Gerald Tyson was employed as a porter at appellee for one year from the spring of 1974 to the spring of 1975. Tyson had a high school education and two years of auto mechanics trade school. Tyson had applied for the porter's position, and he admitted that he had quit his previous job as a mechanic because, as an ex-mental patient, he had problems with concentration and thus with the mechanics work. After a time with appellee, however, Tyson thought that he could again handle a mechanic's job even though he was on medication, and inquired about an opening as a mechanic's trainee. Tyson was passed over in favor of a white man who had experience as a mechanic and had been with appellee nine months.

David Lawson was employed as a janitor at appellee during the summer months of 1974. Lawson had twelve years of education, and his job with appellee was his first after leaving the Navy. Lawson left in the autumn to go to trade school.

The EEOC sought to prove religious discrimination by one statement in an affidavit taken from Mrs. Yarchever in August, 1972, when no counsel for appellee was present. The affidavit stated that appellee did not hire a male applicant for a supervisory position in the Accounting Department "because his religion prevented him from working past sundown on Friday and on Saturday." However, Mrs. Yarchever denied that appellee had a policy of not hiring persons who could not work on certain days because of their religion and testified that she was Jewish and that the company had hired people, including Seventh Day Adventists, who observed the Sabbath on Saturday. The EEOC presented no Seventh Day Adventist witnesses.

Towards the end of trial, appellee counsel renewed his argument that the EEOC could not bring the lawsuit alleging racial and religious discrimination based on a charge filed by a white woman who only had standing to allege sex discrimination. On October 10, 1975, the district court issued its opinion, agreeing with appellee that the EEOC could not bring the lawsuit and consequently held that the district court was without jurisdiction.

The district court noted that under Title VII, the EEOC's role as investigator is triggered by the filing of a charge either by the EEOC or by a person aggrieved. The district court determined that an individual could not be aggrieved and thus have standing to file a charge against an employer for an unlawful employment practice unless the individual had suffered a deprivation at the hands of the employer because Title VII prohibits practices which discriminate against an individual in regard to his opportunity for and conditions of employment. As to the situation presented by this case, when the EEOC uncovers alleged racial and religious discrimination while investigating a charge of sex discrimination, the district court stated that the mechanism established by Congress required that the EEOC file a charge and observe the procedural prerequisites of notice and investigation as to the additional charges. The district court reasoned that if conciliation is to work according to the intention of Congress, then the EEOC must observe the procedural prerequisites so that the parties could have a reasonable opportunity to prepare for conciliation. Because the district court believed that this requirement had been made clear to the EEOC in the case law interpreting Title VII, the suit was deemed in bad faith and attorneys' fees were awarded to appellee. The EEOC has appealed.

II

"In the Equal Employment Opportunity Act of 1972 Congress established an integrated, multistep enforcement procedure culminating in the EEOC's authority to bring a civil action in a federal court." *Occidental Life Insurance Co. v. EEOC,* ——

U.S. ——, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1977). The procedure is triggered when "a person claiming to be aggrieved" or a member of the EEOC files with the EEOC a charge alleging that an employer has engaged in an unlawful employment practice.[1] Such a charge is to be filed within 180 days after the occurrence of the allegedly unlawful practice, and the EEOC is to serve notice of the charge on the employer within ten days of filing and to investigate the charge. § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b). Under § 709(a) of Title VII, 42 U.S.C. § 2000e–8(a), the EEOC may gain access to evidence that is relevant to the charge under investigation, see *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 358 (6th Cir. 1969), and under § 710, 42 U.S.C. § 2000e–9,[2] the EEOC may gain access to evidence that relates to any matter under investigation. The EEOC is then required to determine, "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge,"[3] whether there is reasonable cause to believe the charge is true. § 706(b), 42 U.S.C. § 2000e–5(b). If there is no reasonable cause, the charge must be dismissed and the person claiming to be aggrieved shall be notified. If there is reasonable cause, the EEOC "shall endeavor to eliminate any such unlawful employment practice by informal methods of conference, conciliation, and persuasion." § 706(b), 42 U.S.C. § 2000e–5(b). When the EEOC is unable to secure a conciliation agreement acceptable to the EEOC, the EEOC may bring a civil action.[4] § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). *See Occidental Life Insurance Co. v. EEOC, supra,* —— U.S. at ——, 97 S.Ct. at 2450–2452; Conference Committee Report, Section-by-Section Analysis of H.R. 1746, The Equal Employment Act of 1972, 118 Cong. Rec. 7168–69 (Mar. 6, 1972).

The present case raises questions as to how this procedure is to work when any private party brings charges of discrimination that either are of a different kind than brought by the EEOC in its subsequent lawsuit or are of a kind against which the private party arguably would not have standing to protest. Mrs. Wade, a white female, originally complained of sex discrimination and then amended her charge to include an allegation of race discrimination against black females. The EEOC brought a lawsuit alleging racial and religious discrimination. The district court held that Mrs. Wade's charge could not support the EEOC's lawsuit.

On appeal, the EEOC disputes the district court's conclusion. The EEOC argues first, that a white female does have standing to complain of the absence of black women from the work force and thus the EEOC could investigate racial discrimination and proceed to issue a reasonable cause determination, seek a conciliation agreement, and bring a lawsuit concerning allegations of racial discrimination. The second EEOC

1. Section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c), provides that in the case of an alleged unlawful employment practice occurring in a state that has a law prohibiting that practice and a local authority established to grant relief from such practice, then no charge may be filed under § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), before the expiration of sixty days after proceedings have been commenced under state law, unless those proceedings have been terminated before the sixty day period closes.

2. Section 710 of Title VII, 42 U.S.C. § 2000e–9, was amended in 1972 to incorporate § 11 of the National Labor Relations Act, 29 U.S.C. § 161.

3. § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b). If the case has been first referred under § 706(c) and (d) of Title VII, 42 U.S.C. § 2000e–5(c) and (d) to a state agency for possible disposition under state law outlawing discriminatory employment practices, then the EEOC is to make a reasonable cause determination, so far as practicable, not later than 120 days from the date upon which the EEOC is authorized to take action with respect to the charge.

4. If the employer charged with unlawful discriminatory employment practices is a government, government agency, or political subdivision, and if the EEOC is unsuccessful in conciliation with that category of employer, then the EEOC shall refer the case to the Attorney General, who may bring a civil action in federal court. § 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1).

**446**

argument is that the EEOC can investigate evidence of any other discrimination called to its attention during the course of an investigation and thus could issue a reasonable cause determination, seek a conciliation agreement, and bring a lawsuit concerning allegations of racial and religious discrimination regardless of Mrs. Wade's standing to complain of unlawful employment practices.

Appellee's argument in response is based on a categorization of the discrimination that can occur under Title VII. Appellee separates such discrimination into four kinds: (1) race or color, (2) religious creed, (3) national origin, and (4) sex. *See EEOC v. New York Broadcasting Service, Inc.*, 364 F.Supp. 651 (W.D.Tenn.1973), *aff'd in part and rev'd in part on other grounds*, 542 F.2d 356 (6th Cir. 1976). Appellee contends that an EEOC suit should be confined to those issues which the charging party would have standing to raise. Appellee argues that in the present case, Mrs. Wade, a white female, did not have standing and was not a person aggrieved within the meaning of § 706(b), 42 U.S.C. § 2000e–5(b), with respect to the allegations of racial and religious discrimination brought by the EEOC in its lawsuit because any such discrimination was not directed at her.

We agree with appellee that the district court correctly decided that it did not have jurisdiction over the allegations of religious discrimination in the EEOC's lawsuit, but our agreement as to the district court's conclusion is based on a different rationale. The portion of the EEOC's complaint incorporating allegations of religious discrimination exceeded the scope of the EEOC investigation of appellee reasonably expected to grow out of Mrs. Wade's charge of sex and race discrimination.

■ The clearly stated rule in this Circuit is that the EEOC's complaint is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971); *EEOC v. Kimberly–Clark Corp.*, 511 F.2d 1352, 1363 (6th Cir. 1975), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420 (1976); *McBride v. Delta Air Lines, Inc.*, 551 F.2d 113, 115 (6th Cir. 1977). Although perhaps applied differently, the rule is the same in other circuits. *EEOC v. Occidental Life Insurance Co.*, 535 F.2d 533, 541 (9th Cir. 1976), *aff'd on other grounds*, —— U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *Jenkins v. Blue Cross Mutual Hosp.*, 538 F.2d 164, 167 (7th Cir. 1976), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir. 1975); *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga. 1968); *EEOC v. General Electric Co.*, 532 F.2d 359, 366 (4th Cir. 1976).

There are two reasons for the rule that the EEOC complaint is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. The first reason is that the rule permits an effective functioning of Title VII when the persons filing complaints are not trained legal technicians. "[T]his Court has recognized that Title VII of the Civil Rights Act of 1964 should not be construed narrowly," *Blue Bell Boots, Inc. v. EEOC*, *supra*, 418 F.2d at 358, and thus adopted the rule because "charges of discrimination filed before the EEOC will generally be filed by lay complainants who are unfamiliar with the niceties of pleading and are acting without the assistance of counsel." *Tipler v. E. I. duPont deNemours & Co.*, *supra*, 443 F.2d at 131. Similarly, we stated in *McBride v. Delta Air Lines, Inc.*, *supra*, 551 F.2d at 115:

> Because administrative complaints are filed by completing a form designed to elicit specificity in charges, and because the forms are not legal pleadings and are rarely filed with the advice of legal counsel, any other standard would unreasonably limit subsequent judicial proceedings

which Congress has determined are necessary for effective enforcement of the legal standards established by Title VII. See House Report No. 92–238, U.S.Code Cong. and Admin.News, pp. 2141, 2147–48 (1972).

The second reason for limiting the scope of the EEOC complaint to the scope of the EEOC investigation that can be reasonably expected to grow out of the private party's charge is explained in *Sanchez v. Standard Brands, Inc., supra*, 431 F.2d at 466.

The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation.

■ It is in light of these two reasons for the rule that we conclude in the present case that allegations of religious discrimination could not reasonably be expected to grow out of Mrs. Wade's charge. First, the present case does not involve the situation in which a lay person has inadequately set forth in the complaint filed with the EEOC the discrimination affecting that person. The evidence presented at trial by the EEOC to support its allegations of religious discrimination did not involve practices affecting Mrs. Wade. Rather, the evidence presented by the EEOC was an isolated, single purported statement by Mrs. Yarchever, appellee's Vice President-Finance and head of the Accounting Department, inferring that she did not hire a male applicant because of his religious commitments which might be inconsistent with his hours of employment.

Thus, *Sanchez v. Standard Brands, Inc., supra*, 431 F.2d 455, is distinguishable on the facts from the present case. In *Sanchez*, the woman who filed the complaint with the EEOC initially charged that the discrimination against her at work was based on sex. Investigation by the EEOC into the charge revealed that the employer discriminated against the complaining party because of her national origin and against similarly situated employees because of their race. The lawsuit charging race and national origin discrimination was held to have reasonably grown out of the charge of sex discrimination, even putting aside an amended charge that included allegations of race and national origin discrimination, because the EEOC investigation into the charge revealed the true basis of the discrimination against the employee Sanchez and similarly situated employees. Not to allow the lawsuit would have penalized a lay person for not attaching the correct legal conclusion to her claim and thus would have constituted an improperly narrow construction of Title VII. *See Sanchez v. Standard Brands, Inc., supra*, 431 F.2d at 462–67.

By contrast, in the present case the EEOC investigation into Mrs. Wade's charge revealed that not only was there no sex discrimination against Mrs. Wade, there was no unlawful discrimination of any kind against Mrs. Wade. Unlike *Sanchez*, the present case is not a matter of the complainant not attaching the correct legal conclusion to her charge with the EEOC. The EEOC's reasonable cause determination, conciliation efforts, and lawsuit made allegations of religious discrimination based on evidence wholly apart from Mrs. Wade's experience.

Second, the present case does not involve a situation in which it would be proper, in view of the statutory scheme of Title VII, to permit the lawsuit to include the allegations of religious discrimination. Rather, to allow the EEOC, as it did in the present

case, to issue a reasonable cause determination, to conciliate, and to sue on allegations of religious discrimination unrelated to the private party's charge of sex discrimination would result in undue violence to the legal process that Congress established to achieve equal employment opportunities in this country. *See EEOC v. General Electric Co.,* 532 F.2d 359, 375 (4th Cir. 1976) (Widener, J., dissenting).

■ The procedure to be followed when instances of discrimination, of a kind other than that raised by a charge filed by an individual party and unrelated to the individual party, come to the EEOC's attention during the course of an investigation of the private party's charge is for the filing of a charge by a member of the EEOC and for a full EEOC investigation of that charge. Then the employer is afforded notice of the allegation, an opportunity to participate in a complete investigation of such allegation, and an opportunity to participate in meaningful conciliation discussions should reasonable cause be found following the EEOC investigation. Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), provides for the filing of a charge by a member of the EEOC, and under such a filing, an employer will not be stripped of formal notice of the charge and of the opportunity to respond to the EEOC's inquiry into employment practices with respect to allegations of discrimination unrelated to the individual party's charge. In addition, the filing of a charge will permit settlement discussions to take place pursuant to 29 C.F.R. § 1601.19a [5] after a preliminary investigation but before any finding of reasonable cause.

Several reasons support this position. The filing of a charge by a member of the EEOC as urged by this Court should lead to a more focused investigation on the facts of possible discrimination by an employer when that possible discrimination is not related to the individual party's charge. The danger of permitting the EEOC to sue with respect to discrimination of a type other than that raised by the individual party's charge and unrelated to the individual party is illustrated by the present case. The sole piece of evidence relied upon by the EEOC to prove religious discrimination by appellee was, as we have said, a purported statement by Mrs. Yarchever, appellee's Vice President-Finance and head of the Accounting Department, in an affidavit capable of being construed as an admission that she had not hired a male applicant because he was a Sabbitarian. There was no other evidence presented by the EEOC as to any other possible cases of religious discrimination by appellee, and in the one situation that the EEOC did present, it is not clear, especially in view of the Supreme Court's recent decision in *TransWorld Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), that the facts were developed sufficiently to answer the question whether there would have been an undue hardship on appellee to accommodate reasonably to the applicant's religious practices. Section 701(j) of Title VII, 42 U.S.C. § 2000e(j), in conjunction with § 703 of Title VII, 42 U.S.C. § 2000e–2, provide in essence that discrimination against an individual because of religion will not be unlawful when there is an undue hardship on an employer to accommodate reasonably to the applicant's religious practices.

We thus are unable to accept the EEOC's argument that the allegations of religious discrimination were within the scope of an EEOC investigation reasonably related to Mrs. Wade's charge of sex discrimination because the "facts" of religious discrimination emerged during a legitimate investigation of sex discrimination. An investiga-

---

**5.** 29 C.F.R. § 1601.19a provides for predetermination settlement procedure.

At any time subsequent to a preliminary investigation and prior to the issuance of a determination as to reasonable cause, the District Directors, or other designated offi-cers, may engage in settlement discussions. The District Directors, or other designated officers, may make and approve settlements on behalf of the Commission, in those cases where such authority has been delegated to them by the Commission.

tion into sex discrimination by appellee may have uncovered evidence suggesting religious discrimination not affecting Mrs. Wade. The issue, however, is whether such religious discrimination was within the scope of an investigation reasonably related to Mrs. Wade's charge. We think not because otherwise, a proper resolution of the question of unlawful religious discrimination by appellee would be jeopardized.

Another reason for our position is the importance of conciliation to Title VII. When Title VII was originally enacted in 1964, the EEOC was not given the power to sue. Instead, cooperation and voluntary compliance were seen as the means for achieving equality of opportunity in employment. *EEOC v. Hickey–Mitchell Co.*, 507 F.2d 944, 947 (8th Cir. 1974). The experience with voluntary compliance as the sole means of EEOC enforcement was not entirely successful, however, and Congress was forced to recognize the shortcomings of the voluntary compliance approach without any other enforcement power. S.Rep.No. 92–415, 92d Cong., 1st Sess. 5 (1971); H.Rep.No. 92–238, 92d Cong., 1st Sess. 8–9 (1971), U.S.Code Cong. & Admin.News 1972, p. 2137. Congress thus enacted the 1972 amendments to Title VII to strengthen the EEOC's role of conciliator and to empower the EEOC to sue in federal court. *See EEOC v. Kimberly–Clark Corp., supra,* 511 F.2d at 1357; *EEOC v. Hickey–Mitchell Co., supra,* 507 F.2d 947.

Despite the added enforcement power, Congress still intended that conciliation be the preferred method for eradicating employment discrimination. *EEOC v. Kimberly–Clark Corp., supra,* 511 F.2d at 1357; *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1092 (6th Cir. 1974). With the passage of the 1972 amendments to Title VII, the hope expressed by Congress was that recourse to the lawsuit will be the exception and not the rule, *see* Conference Committee Report, *supra,* 118 Cong. Rec. 7168, and "[o]nly if conciliation proves to be impossible. . . ." Remarks of Congressman Perkins, Conference Commit-

tee Report, Section-by-Section Analysis of H.R. 1746, The Equal Employment Act of 1972, 118 Cong.Rec. 7563 (Mar. 8, 1972). The EEOC's duty to attempt conciliation is thus "among its most essential functions," *EEOC v. Raymond Metal Products Co.,* 530 F.2d 590, 596 (4th Cir. 1976), and the "primary goal" of Title VII is "the securing of voluntary compliance with the law." *EEOC v. MacMillan Bloedel Containers, Inc., supra,* 503 F.2d at 1092. Several courts have stated that the EEOC must seek to conciliate before it institutes suit. *Patterson v. American Tobacco Company,* 535 F.2d 257, 272 (4th Cir. 1976), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *EEOC v. Hickey–Mitchell Co., supra,* 507 F.2d at 948.

It is our belief that if conciliation is to work properly, charges of discrimination must be fully investigated after the employer receives notice in a charge alleging unlawful discriminatory employment practices. *See EEOC v. MacMillan Bloedel Containers, Inc., supra,* 503 F.2d at 1092. The requirement that a member of the EEOC file a charge when facts suggesting unlawful discrimination are discovered that are unrelated to the individual party's charge does serve the purposes of treating the employer fairly and forcing the employer and the EEOC to focus attention during investigation on the facts of such possible discrimination and thereby does serve the goal of obtaining voluntary compliance with Title VII.

We thus are unable to accept the EEOC's argument that, as in *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), it would be a matter of placing form over substance, resulting in the waste of administrative resources and the delay in the enforcement of rights, by requiring a member of the EEOC to file a charge with respect to allegations of discrimination uncovered in an EEOC investigation which were of a kind not raised by the individual party and which did not affect the individual party. Moreover, the EEOC in the present case can hardly protest of delay. Mrs. Wade origi-

nally filed her charge October 19, 1970. The EEOC's reasonable cause determination was issued over two years later on November 13, 1972. Almost one and one-half years later, on April 4, 1974, the EEOC notified appellee that conciliation efforts had failed. Nearly eight months after notification of the failure of conciliation and over four years after the filing of the original charge, on November 27, 1974, the EEOC filed suit.

■ Finally, we believe that our position in the present case is supported by the concern expressed in Congress that due process safeguards be built into the statutory scheme of Title VII. Remarks of Congressman Quie, House Debate on H.R. 1746, 92d Cong., 1st Sess., 117 Cong.Rec. 31962 (Sept. 15, 1971); S.Rep.No. 92–415, 92d Cong., 1st Sess. 25 (1971). Although neither the statutory language nor the legislative history directly address the question before us, it is clear that the requirement in § 703 of Title VII, 42 U.S.C. § 2000e–2, of timely notice to an employer of a charge filed with the EEOC alleging employment discrimination embodies due process guaranties. *New Orleans Public Service, Inc. v. Brown,* 369 F.Supp. 702, 710 (E.D.La.1974). If an EEOC investigation of an employer uncovers possible unlawful discrimination of a kind not raised by the charging party and not affecting that party, then the employer should be given notice if the EEOC intends to hold the employer accountable before the EEOC and in court.

We are unable to accept the EEOC's argument that it was immaterial that appellee received notice and opportunity to comment at the time the EEOC issued its reasonable cause determination and during conciliation rather than before the issuance of the reasonable cause determination. While a court might conclude that the Due

Process Clause of the Fifth Amendment was not violated by the procedure followed by the EEOC in the present case, our concern is with the legislative judgment of due process incorporated into the specific statutory scheme of Title VII. Evidence of that legislative intent indicates a concern for fair treatment of employers.

### III

■ We would apply this holding on the issue of religious discrimination to that of race discrimination were it not for the fact that Mrs. Wade amended her charge to allege that appellee discriminated against black females. Absent the amendment to Mrs. Wade's charge, the EEOC allegations of race discrimination, based on evidence uncovered during the EEOC investigation, were even more unrelated to Mrs. Wade's charge of sex discrimination. The proof at trial concerning racial discrimination did not at all involve Mrs. Wade and her association with black females, but involved exhibits showing the racial composition of appellee's past and present work force and the experience of five black men in the blue collar Parts and Service Departments. Nonetheless, the EEOC has argued on appeal that an analysis of appellee's hiring and promotion practices with respect to blacks was reasonably related to Mrs. Wade's charge of sex discrimination because "[t]he fact of race . . . discrimination emerged during its legitimate investigation of the sex discrimination charge." [6] The EEOC did not, however, receive evidence suggesting the possibility of race discrimination by appellee during an investigation of the sex discrimination charge. The EEOC subsequently received that information because it asked for it in what was obviously an investigation of possible race discrimination, and appellee's Mrs. Yarchever co-operated with the EEOC.[7]

---

6. Appellant EEOC brief at 31.

7. We reject the apparent position of *EEOC v. Occidental Life Insurance Co.,* 535 F.2d 533, 541 (9th Cir. 1976), *aff'd on other grounds,* —— U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), that the scope of the EEOC's complaint could

not be ruled as not limited to the scope of the EEOC investigation reasonably expected to grow out of the individual party's charge because there was no objection to the EEOC requests for evidence. The facts revealed by the evidence produced by an employer may go beyond what is arguably relevant to the charge.

Hence, absent the amendment to Mrs. Wade's charge with the EEOC to include an allegation that appellee did not hire black females, what the EEOC is arguing in the present case with respect to the scope of the EEOC complaint goes beyond the limitations set forth in *EEOC v. General Electric Co., supra,* 532 F.2d 539. In that case, the Fourth Circuit held:

> When the same material, i.e., the tests used by the defendant, give rise to a reasonable cause to believe the defendant thereby is practicing discrimination both racial and sexual, the EEOC need not confine its actions to the racially discriminatory aspects of the testing program but may "include in its deliberations all facts developed in the course of a reasonable investigation of that charge" and may predicate a reasonable cause determination thereon. And any claim included properly in the reasonable cause determination and offer to conciliate may be the basis of a civil suit, if conciliation on that claim fails.

532 F.2d at 370. The Fourth Circuit allowed an EEOC complaint to charge both race and sex discrimination when the charges initiating Title VII procedures were filed by two black men who alleged only race discrimination because there was a root source of discrimination against blacks and women in the testing done by the employer.[8]

In the present case, there was no such common source of discrimination against blacks and women. To justify the EEOC's position would require us to accept the proposition that once a charge is filed with the EEOC, then the EEOC may investigate whether the employer is engaged in any discriminatory practices and proceed to issuance of a reasonable cause determination, to conciliation, and even to court as to unlawful employment practices under Title VII that it may have uncovered. Such an expansive theory, giving the EEOC a *carte blanche* once a charge is filed with the EEOC, must be premised on the belief that all forms of unlawful employment discrimination—whether by race, religion, sex, or national origin and whether involving hiring, discharge, promotion, or compensation—are like or related regardless of the separate individuals involved. Under the EEOC's theory, investigation of one form of employment discrimination can always be said to have reasonably expected to grow out of a charge of another form of employment discrimination. *See EEOC v. Huttig Sash & Door Co., supra,* 511 F.2d at 455; *EEOC v. General Electric Co., supra,* 532 F.2d at 364–69. We do not subscribe to that theory because for the purposes of Title VII, forms of employment discrimination involving race, religion, sex, and national origin are not so related. *See EEOC v. New York Broadcasting Service, Inc., supra,* 542 F.2d at 360.

In the present case, the investigation of race discrimination cannot be said to have been reasonably expected to grow out of Mrs. Wade's sex discrimination charge. The allegations of race discrimination in the EEOC complaint, however, are in a different posture before us than those of religious discrimination because Mrs. Wade amended her charge to allege that appellee failed to hire black females. If Mrs. Wade could charge race discrimination, then the EEOC investigation of appellee for race discrimi-

---

In the present case, appellee co-operated with the EEOC. The disclosure, however, should not act as an estoppel against the employer so as to exempt the EEOC from observing the procedures that Congress has designed to obtain voluntary compliance with the law. To adopt the position stated in *Occidental Life* by the Ninth Circuit would reward recalcitrant employers but possibly strip cooperating employers of procedural protections.

8. The Fourth Circuit in *EEOC v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976), cited this Court's decision in *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352 (6th Cir. 1975), for this rule, but in *Kimberly-Clark,* the private charge was filed by a black person alleging racial discrimination and the EEOC complaint incorporated other allegations of racial discrimination. Thus, *Kimberly-Clark* does not support the broader propositions in *General Electric* concerning the scope of the EEOC complaint.

nation was pursuant to a valid charge. The question presented, then, is whether Mrs. Wade, a white female, had standing under Title VII to file a charge with the EEOC protesting alleged race discrimination against blacks by appellee.

Congress specifically limited the filing of discrimination charges to persons actually injured by the alleged acts of discrimination. Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), provides that a suit alleging an unlawful employment practice under Title VII be initiated by the filing of a charge "by or on behalf of a person claiming to be aggrieved."

Appellee argues that "a person claiming to be aggrieved" under Title VII must be a person who is a member of the class against which the discrimination is allegedly directed. Appellee reasons that unless a person is a member of the class against which the discrimination is allegedly directed, then that person cannot suffer injury cognizable under Title VII. Appellee seeks support in dicta in *McDonnell-Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), which stated that to establish a prima facie case for a private action under Title VII, the complainant must carry the initial burden of showing:

> (i) *that he belongs to a racial minority;* (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. (emphasis supplied)

Appellee also cites several district court opinions, which have held that whites cannot properly file Title VII charges alleging discrimination against blacks, *EEOC v. New York Times Broadcasting Service, Inc., supra,* 364 F.Supp. 651, *Ripp v. Dobbs House, Inc.,* 366 F.Supp. 205 (N.D.Ala.1973), and that a charge filed by a male cannot be the basis for an EEOC suit alleging discrimination against females. *EEOC v. National Mine Service Company,* 8 FEP Cases 1233

(E.D.Ky.1974); *EEOC v. General Electric Co.,* 376 F.Supp. 757 (E.D.Va.1974), *rev'd* 532 F.2d 359 (4th Cir. 1976). *See EEOC v. Beaver Gasoline Co.,* 45 U.S.L.W. 2545 (WD.Pa. [opinion filed April 22, 1977] May 24, 1977).

We would be inclined to agree with appellee were it not for the Supreme Court's decision in *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). In *Trafficante,* two tenants of an apartment complex, one white and one black, filed complaints, pursuant to Title VIII procedures, with the Secretary of Housing and Urban Development, alleging that their landlord discriminated against nonwhites. The complainants claimed that they had been injured as a result of the discriminatory practices of the owner of the apartment complex. The Supreme Court held that the definition of "person aggrieved" contained in § 810(a) of Title VIII, 42 U.S.C. § 3610(a), "showed a congressional intent to define standing as broadly as is permitted by Article III of the Constitution" and that the tenants in the case had suffered real injury in "the loss of important benefits from interracial associations" resulting from the "exclusion of minority persons from the apartment complex." 409 U.S. at 209–10, 93 S.Ct. at 367.

For several reasons, *Trafficante* requires us to hold that the definition of "a person claiming to be aggrieved" under Title VII includes a white person, such as Mrs. Wade in the present case, who may have suffered from the loss of benefits from the lack of association with racial minorities at work. *See Waters v. Heublein,* 547 F.2d 466, 469–70 (9th Cir. 1976); *Gray v. Greyhound Lines, Inc.,* 545 F.2d 169, 176 (D.C. Cir. 1976); Note, Work Environment Injury Under Title VII, 82 Yale L.J. 1695 (1973); *Winston v. Lear-Siegler,* 558 F.2d 1266 (6th Cir. 1977).

First, the pertinent statutory language in Titles VII and VIII is strikingly similar. Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), provides for the filing of

charges with the EEOC by a "person claiming to be aggrieved." Section 810(a) of Title VIII, 42 U.S.C. § 3610(a), provides for the filing of charges with the Secretary of Housing and Urban Development by a "person aggrieved." Since both Titles VII and VIII are civil rights acts, it is difficult to believe that Congress intended such similar language to have different meanings.

Second, the statutory design of the fair housing provisions in Title VIII is functionally nearly identical to the employment provisions of Title VII. Both Titles VII and VIII include a list of practices deemed to be discriminatory. *Compare* §§ 804–06 of Title VIII, 42 U.S.C. §§ 3604–06, *with* §§ 703–04 of Title VII, 42 U.S.C. §§ 2000e–2–3. Both Titles VII and VIII establish enforcement procedures initially set in motion by the filing of a charge by an aggrieved person. The charge is filed with the EEOC in the case of Title VII and the Secretary of Housing and Urban Development in the case of Title VIII. Both Titles VII and VIII provide for notification of the charges to the alleged offenders of the law, investigation into the alleged unlawful discrimination, and conciliation procedures. Both Titles VII and VIII empower persons aggrieved to bring private actions to end the alleged discrimination. *Compare* § 706 of Title VII, 42 U.S.C. § 2000e–5, with § 810 of Title VIII, 42 U.S.C. § 3610.

The only difference between Titles VII and VIII in this respect, destroying an otherwise existing symmetry, is that the EEOC has the power to bring public suits to enforce Title VII, whereas the Secretary of Housing and Urban Development has no such power under Title VIII. *Trafficante* did attach importance to Title VIII's lack of public enforcement in interpreting the "person aggrieved" language of Title VIII, but the existence of public enforcement under Title VII cannot be a basis for interpreting more narrowly the "person claiming to be aggrieved" language of Title VII. *Waters v. Heublein, supra,* 547 F.2d 466. The public enforcement power in Title VII was added by the 1972 amendments to that Act,

before which time the enforcement procedures of Titles VII and VIII were virtually identical. The intention of the 1972 amendments to Title VII was to expand the coverage of and increase the compliance with the law, *see* Conference Report on H.R. 1746, 1972 U.S.Code Cong. & Admin.News p. 2179, not to narrow the class of complainants who might bring charges of discrimination to the attention of authorities. *Waters v. Heublein, supra,* 547 F.2d at 470.

Third, the Supreme Court in *Trafficante v. Metropolitan Life Insurance Co., supra,* 409 U.S. at 209, 93 S.Ct. 364, cited a court of appeals precedent under Title VII, *Hackett v. McGuire Bros., Inc.,* 445 F.2d 442 (3d Cir. 1971), with approval in holding that the "person aggrieved" language of § 810 of Title VIII, 42 U.S.C. § 3610, showed a congressional intent to define standing under Title VIII as broadly as is permitted by Article III of the Constitution. *Hackett* had held that the "person claiming to be aggrieved" language of § 706 of Title VII, 42 U.S.C. § 2000e–5(b), showed a congressional intent to define standing under Title VII as broadly as is permitted by Article III of the Constitution. 445 F.2d at 446. The fact that *Trafficante* thus approved the reasoning of this Title VII case further demonstrates that on this issue of standing the Supreme Court does not conceive Titles VII and VIII to be different and that under both Titles VII and VIII a person can be aggrieved from the loss of benefits from the lack of interracial associations.

Fourth, the purposes and effects of Title VII in the employment field are identical to the purposes and effects of Title VIII in the housing field. *Waters v. Heublein, supra,* 547 F.2d 466. Both Titles VII and VIII are aimed at outlawing discrimination based on race, religion, national origin, and sex by providing equal employment and fair housing opportunities. The provision for such opportunities and the ending of discrimination declared unlawful by Titles VII and VIII will affect housing patterns and employment practices and thus increase interracial contact in both home and work envi-

ronments. The loss of benefits from the lack of interracial associations is as real at work as it is at home because "interpersonal contacts" occur in both places. *Waters v. Heublein, supra,* 547 F.2d 466.

Fifth, the EEOC has interpreted Title VII to confer upon every employee the right to a working environment free from unlawful employment discrimination.[9] Under the EEOC's interpretation of Title VII, whites are aggrieved by discrimination against blacks at their place of employment and have standing to file charges with the EEOC and sue in court. EEOC Decision No. 72–0591 (1971), CCH EEOC Decisions (1973) ¶ 6314, at 4564; EEOC Decision No. 71–909 (1970), CCH EEOC Decisions (1973) ¶ 6193, at 4329. While it is true that an EEOC interpretation of Title VII is not controlling, *see General Electric Co. v. Gilbert,* 429 U.S. 125, 141–46, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), an EEOC interpretation, if not entitled to "great deference," *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), is to be viewed as a guide, and recognized as having come from a body of experience and informed judgment, especially if the EEOC has interpreted Title VII in a certain manner consistently and persuasively. *General Electric Co. v. Gilbert, supra,* 429 U.S. at 413–15, 97 S.Ct. 401. The EEOC has consistently held that whites could file charges with the EEOC because of discrimination against blacks at their place of employment, EEOC Decision No. 70–09, 2 CCH Empl.Prac.Guide ¶ 6026 (1969), EEOC Decision No. 71–909, *supra,* EEOC Decision No. 72–0591, *supra,* and this aspect of the EEOC interpretation of Title VII is in agreement with our conclusion in the present case.

■ Precisely how *Trafficante* applies in the employment context is a question we need not address. *Trafficante* held that a white tenant in an apartment complex had standing to complain of racial discrimination at his apartment complex. Whether a white employee has standing to complain to the EEOC of racial discrimination in the employee's entire company or only in the employee's department in the company is irrelevant in the present case to a determination of the proper scope of the EEOC complaint. Even if the employee only has standing to complain of racial discrimination in the employee's department, the EEOC may properly investigate the entire company for patterns of the discrimination of which the employee has complained and bring suit on the basis of evidence relating to the entire company uncovered during the investigation. *Blue Bell Boots, Inc. v. EEOC, supra,* 418 F.2d at 358; *Tipler v. E. I. duPont deNemours & Co., supra,* 443 F.2d at 130–31; *McBride v. Delta Air Lines, Inc., supra,* 551 F.2d at 115–16.

■ In the present case, then, Mrs. Wade had standing to complain of discrimination against black females and the EEOC could investigate appellee for racial discrimination. The allegations of racial discrimination in the EEOC's complaint were thus properly before the district court, and on remand the district court must consider those allegations on the merits.

IV

■ Because we conclude that the district court did have jurisdiction as to allegations of racial discrimination in the EEOC complaint, we must reverse the district court award of attorneys' fees to appellee and remand the question to the district court for reconsideration. An award of attorneys' fees against the EEOC for simply bringing the allegations of racial discrimi-

---

9. While the EEOC interpretation of Title VII suggests a theory of standing broader than that adopted in *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), we are not approving that broader theory. More specifically, we pass no judgment on the questions whether a male could file charges alleging sex discrimination against females, whether native born Americans could file charges alleging national origin discrimination against Mexican-Americans, and whether a Methodist could file charges alleging religious discrimination against Seventh Day Adventists.

nation in its complaint was not proper, although an award still may be justified if the district court decides the merits of the EEOC's allegations of racial discrimination in favor of appellee. An award of attorneys' fees against the EEOC for bringing the allegations of religious discrimination in its complaint may still be justified, but the district court must deal with that issue on remand. Any award of attorneys' fees by the district court in the present case, however, should be considered in light of the legal principles set forth in this opinion.

■ Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), provides:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorneys' fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

The plain meaning of the section in the context of the present case is that the district court may, in its discretion, award an attorney's fee to appellee if appellee prevails against the EEOC. See United States Steel Corp. v. United States, 519 F.2d 359, 362 (3d Cir. 1975); Van Hoomissen v. Xerox Corp., 503 F.2d 1131, 1133 (9th Cir. 1974). Appellee contends that such a literal construction of the statute is only proper.

The question that the EEOC raises, however, is whether the discretion of a district court in a Title VII case is limited as to the circumstances under which an award of attorneys' fees to a defendant employer is proper. The EEOC's argument with respect to attorneys' fees was stated in more sophisticated form by the Third Circuit in United States Steel Corp. v. United States, supra, 519 F.2d 359, which was followed by the Fourth Circuit in EEOC v. Christiansburg Garment Company, Inc., 550 F.2d 949 (4th Cir. 1977), cert. granted, —— U.S. ——, 97 S.Ct. 2948, 53 L.Ed.2d 1077 (1977).

■ The argument is that when a statute commits the awarding of attorneys' fees to the discretion of the trial court, traditional equitable considerations apply. However, an analysis of those equitable factors in the context of Title VII cases leads to the application of two rules, one for private plaintiffs and one for defendant employers. On the one hand, attorneys' fees to prevailing private plaintiffs are allowed, absent exceptional circumstances, because such plaintiffs act as private attorneys general in furthering the national policy of eradicating unlawful employment discrimination. This theory was stated by the Supreme Court in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), a Title II case, but has been applied or recognized in Title VII by several courts of appeal because the statutory language permitting discretionary attorneys' fees under Titles II and VII is substantially identical. Lea v. Cone Mills Corp., 438 F.2d 86 (4th Cir. 1971); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970); Schaeffer v. San Diego Yellow Cabs, Inc., 464 F.2d 1002 (9th Cir. 1972); United States Steel Corp. v. United States, supra, 519 F.2d 359, 363; compare § 204(b) of Title II, 42 U.S.C. § 2000a–3(b), with § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k). On the other hand, attorneys' fees to prevailing defendant employers are not allowed unless the private plaintiff or the EEOC shows bad faith, vexatiousness, abusive conduct, or an attempt to harass or embarrass because "[a] prevailing defendant seeking an attorney's fee does not appear before the court cloaked in a mantle of public interest." United States Steel Corporation v. United States, supra, 519 F.2d at 364; EEOC v. Christiansburg Garment Company, Inc., supra, 550 F.2d at 951. Prevailing defendant employers would thus be reduced to receiving awards under the same standard as exists for the "American rule" of attorneys' fees, which does not allow the recovery of attorneys' fees except in such

instances as bad faith on the part of the opposing party. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

■ We decline to hold that a finding of bad faith on the part of the losing plaintiff in a Title VII case is a necessary prerequisite to awarding attorneys' fees to a prevailing defendant employer. Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), does not, on its face, permit the adoption of such an explicitly stated double standard. The EEOC may argue that different policy considerations with respect to private plaintiffs and defendants in the exercise of a district court's discretion are the cause of the double standard, but the institution of such different policy considerations as to prevailing private plaintiffs and defendants is a matter for Congress and not the courts. *EEOC v. Christiansburg Garment Company, Inc., supra,* 550 F.2d 949, 952 (Widener, J., dissenting).

In *Alyeska Pipeline Co. v. Wilderness Society, supra,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, the Supreme Court held that only Congress, and not the courts, could authorize a "private attorney general" exception to the American rule that attorneys' fees are not, with few exceptions, recoverable in federal cases in the absence of statutory authorization. In *Alyeska,* the Court stated:

> Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded *and the range of discretion of the courts in making those awards* are matters for the Congress to determine. (emphasis supplied)

421 U.S. at 262, 95 S.Ct. at 1624. The Supreme Court in *Alyeska* thus contemplates that Congress will state when different standards are to be applied to parties under a statute authorizing attorneys' fees,

instead of courts creating standards based on surmises about the public interest. The Third Circuit in *United States Steel* and the Fourth Circuit in *Christiansburg Garment* believe that a defendant in a Title VII case does not further the public interest with its defense. Still, it seems clear from the language of § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), that Congress did not conceive of the relative equities between prevailing private plaintiffs and prevailing defendant employers as being different; a prevailing private plaintiff may further the goal of eradicating unlawful employment discrimination but a prevailing defendant has suffered from an unnecessary burden imposed on its business. *See EEOC v. Western Electric Co.,* 10 FEP Cases 1275 (D.Md. 1975).[10]

We are aware of legislative history to the Civil Rights Attorney's Fees Awards Act of 1976 that indicates Congress was aware and approved of the double standard in the award of attorneys' fees under Title VII and intended that result with respect to the 1976 Attorney's Fees Act, although written like § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k). *See* S.Rep.No. 94–1011, 94th Cong., 2d Sess. 4–5 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908; H.Rep. No. 94–1558, 94th Cong., 2d Sess. 6–8 (1976). We decline, however, to depart from the generally accepted rule of statutory construction that the plain language of a statute dictates its interpretation by the courts. Frankfurter, Reading of Statutes, 47 Colum.L.Rev. 527 (1947); Radin, Statutory Interpretation, 43 Harv.L.Rev. 863 (1930).

In applying § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), when the defendant employer prevails, then, the district court should exercise its discretion in light of all the circumstances of the case. The plaintiff's conduct during litigation is but one factor for the district court to consider.

Affirmed in part and reversed in part.

---

**10.** Another problem with the EEOC position on appeal is that it would render the statute authorizing an award of attorneys' fees superfluous in private Title VII cases when the defendant prevails. If the objective of Congress had been to authorize the assessments of attorneys' fees against a private plaintiff who acts in bad faith, then no new statutory provision would have been necessary because the American rule allows recovery in such cases even without a statute. *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* 421 U.S. at 258–59, 95 S.Ct. 1612. See *Newman v. Piggie Park Enterprises, supra,* 390 U.S. at 402 n. 4, 88 S.Ct. 964.