EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Appellee,

v.

CHRISTIANSBURG GARMENT
COMPANY, INC., Appellant.

No. 75–2131.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1976.
Decided Jan. 12, 1977.

**950**

William W. Sturges, Charlotte, N. C. (John J. Doyle, Jr., Weinstein, Sturges, Odom, Bigger & Jonas, Charlotte, N. C., William B. Poff, Roanoke, Va., on brief), for appellant.

Marleigh Dover Lang, Atty., E. E. O. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Richard S. Cohen and Ramon V. Gomez, E. E. O. C., Washington, D. C., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

FIELD, Senior Circuit Judge:

After successfully defending an action brought against it by the Equal Employment Opportunity Commission (Commission) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., (Supp.1972), Christiansburg Garment Company, Inc., (Christiansburg) petitioned the district court for an allowance of attorney's fees under Section 706(k) of the Act, 42 U.S.C. § 2000e–5(k). The petition was denied and Christiansburg has appealed.

On February 1, 1968, Rosa C. Helm, a black employee of Christiansburg, was laid off from her job in petitioner's plant in Christiansburg, Virginia. She returned to work about one month later, and in May of 1968 filed a charge with the Commission alleging racial discrimination in her one-month lay off. The charge was processed and investigated by the Commission and by letter dated February 11, 1970. Christiansburg was advised that there was reasonable cause to believe that it had engaged in employment practices violative of Title VII. Attempts at conciliation were unsuccessful, and by letter of July 1, 1970, the Commission notified Mrs. Helm of her right to sue. Mrs. Helm, however, did not exercise her right within the thirty day statutory period.[1]

Under the 1972 Amendments to the Civil Rights Act of 1964 which became effective on March 24, 1972,[2] the Commission was authorized to bring suit in its own name to secure compliance with Title VII, and in December of 1973 the Commission notified Christiansburg that it intended to pursue Mrs. Helm's claim. Attempts to resolve the controversy failed and the Commission instituted suit in the district court against Christiansburg on January 25, 1974. After discovery proceedings were concluded, Christiansburg filed a motion for summary judgment. The district court, holding that the Commission had no authority to prosecute the action under the 1972 Amendments, granted the summary motion on the basis that Mrs. Helm's claim was not pending with the Commission on the effective date of the 1972 Amendments as required by Section 14 thereof.[3] The court concluded that when Mrs. Helm was notified on July 1, 1970, of her right to bring suit against Christiansburg there was no further action to be taken by the Commission with respect to her charge and, accordingly, its authority terminated on that date.[4] The Commission did not appeal from this judgment.

1. 42 U.S.C. § 2000e–5(e).

2. Pub.L. 92–261, 86 Stat. 103.

3. Section 14 of Pub.L. 92–261 reads as follows: "The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter."

4. The opinion of the district court appears sub nom., *Equal Emp. Op. Com'n v. Christiansburg Garment Co., Inc.*, 376 F.Supp. 1067 (W.D.Va. 1974).

In July of 1975, Christiansburg filed its petition for attorney's fees pursuant to Section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(k), which provides:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

The district court denied the petition, stating that the Commission's action in bringing the suit could not be characterized as unreasonable or meritless, and that it represented a good faith effort by the Commission to discharge the duties assigned to it by Congress under the Civil Rights Act.

While the Commission took the position in the district court that Section 706(k) does not authorize an award of attorney's fees against it, it now concedes that the district court had such authority under the statute. In making this concession, it recognizes the authority of *United States Steel Corporation v. United States,* 519 F.2d 359 (3 Cir. 1975), and *Van Hoomissen v. Xerox Corporation,* 503 F.2d 1131 (9 Cir. 1974), with which we are in accord. The Commission also concedes that Christiansburg was the prevailing party in this litigation, but contends, however, that the district court acted properly in denying attorney's fees in this case. Christiansburg, on the other hand, takes the position that the court applied an erroneous standard in rejecting its petition.

■ In private Title VII suits, where the suing party is, in effect, a "private attorney general," attorney's fees are normally awarded to a successful plaintiff upon the basis that such a policy will further the Congressional goal of eliminating discriminatory practices in employment. We so held in *Robinson v. Lorillard Corporation,*

444 F.2d 791 (1971), and *Lea v. Cone Mills Corporation,* 438 F.2d 86 (1971), where we applied the rationale of *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), in Title VII litigation. However, these policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant. The distinction between the two was noted by Judge Adams in *United States Steel Corporation v. United States, supra,* 519 F.2d, at 364:

"A prevailing defendant seeking an attorney's fee does not appear before the court cloaked in a mantle of public interest. In contrast to the advantage to the public that inheres in a successful attack against discriminatory practices, as in *Piggie Park,* one cannot say as a general rule that substantial public policies are furthered by a successful defense against a charge of discrimination. Instead, a defendant seeking a counsel fee under Section 706(k) must rely on different equitable considerations." [5]

■ Christiansburg acknowledges that its posture is different from that of a successful party plaintiff, but contends that the reasonableness of the Commission's conduct in pursuing the litigation should be the controlling standard rather than the good faith test which was applied by the district court. It suggests that "good faith" is a highly subjective standard that is inappropriate in the determination of attorney's fees. The good faith standard, however, has been often recognized by the courts, and has acquired a well-defined meaning in this context.[6] It was approved by the court in *United States Steel Corporation v. United States, supra,* 519 F.2d, at 364:

"The indicia associated with the grant of an attorney's fee—vexatiousness, bad faith, abusive conduct, or an attempt to harass or embarrass—were absent. We

---

**5.** In that case, like the one presently before us, the Commission was a litigating party. The distinction would apply, a fortiori, in those actions brought by private parties. *See Wright v. Stone Container Corp.,* 524 F.2d 1058 (8 Cir. 1975).

**6.** *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 245 & 258, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

do not find the district court's formulation of the standard to be erroneous." It would appear that this same standard was applied by the Ninth Circuit when it allowed attorney's fees in *Van Hoomissen v. Xerox Corporation, supra.*[7]

In the present case the district court noted that it had ruled in favor of the Commission on two of the three grounds raised by the petitioner in its motion for summary judgment, and further observed that the interpretation of Section 14 of the 1972 Amendments was an issue of first impression requiring judicial resolution. We agree with the court below that under these circumstances it could not be said that the Commission acted in bad faith in bringing the lawsuit. Accordingly, the action of the district court is affirmed.

*AFFIRMED.*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

I

I think it worth mentioning that the Ninth Circuit, in *Van Hoomissen v. Xerox Corp.,* 503 F.2d 1131 (9th Cir. 1974),[1] has come to the opposite conclusion in a case very nearly indistinguishable on its facts from that present here.

The rule announced by the majority in this case follows *United States Steel Corp.,* and is that attorneys' fees should not be awarded to a prevailing defendant in a Title VII case unless it may be said that the plaintiff " . . . acted in bad faith in bringing the lawsuit."

In *Van Hoomissen,* the EEOC had attempted to intervene and assert two contentions in the district court; one that Xerox had engaged in retaliation against an employee, and, second, that Xerox discriminated against employees. The district court allowed intervention but restricted its application to the retaliation claim, not permitting litigation of the discrimination claim. Upon appeal from the denial of intervention as to the discrimination claim, the Court of Appeals dismissed the appeal on the ground that whether or not to allow the EEOC to intervene in the district court was a matter of discretion which had not been abused. There was no intimation of bad faith, harassment, or the like, on the part of the EEOC anywhere in the proceeding, which, concerning itself with technical matters only, was much like that present here. The court held that since Xerox prevailed in the appeal, it qualified as a "prevailing party" under the statute, thus making it eligible for an award of attorneys' fees, and concluded that " . . . we exercise our discretion and award Xerox an attorney's fee of $3,000." p. 1133.

The point I make is illustrated by *Van Hoomissen.* Bad faith on the part of a losing plaintiff in a Title VII case should not be the necessary prerequisite to awarding attorneys' fees.

II

I have mentioned *Van Hoomissen* by way of illustration that there is a conflict in the circuits on this point, and that I think the rule illustrated by that case is preferable.

The principal point of my dissent, however, is that the opinion of the majority creates a double standard in the application of Title VII. Employers are forbidden by the Civil Rights Act to apply double standards to their employees, and I do not accept the proposition that the courts should administer one standard for the plaintiff and a very different standard for the defendant in the prosecution and defense of suits under the statute.

The statute involved here permits the district court " . . . in its discretion . . . [to] allow the prevailing party

7. In denying rehearing in that case the court stated:

"The court in allowing attorney's fees was mindful that the appeal by EEOC was vexatious and prosecuted on highly questionable grounds." Unpublished Order (9 Cir. No. 74–1037, Nov. 6, 1974).

1. Reported on the merits of dismissing the appeal in 497 F.2d 180 (9th Cir. 1974) and in the district court in 368 F.Supp. 829 (1973).

. . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 2000e–5(k).

It was a statute phrased in like words which the Supreme Court construed in *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), in which the Court held that a prevailing plaintiff under Title II of the same statute "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." p. 402, 88 S.Ct. p. 966. We followed that reasoning in construing the same statute involved in this case in *Robinson v. Lorillard Corp.,* and *Lea v. Cone Mills Corp.,* as has been noted by the majority.

All of these cases, however, were followed by *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which put to rest the private attorney general theory of recovery of attorneys' fees unless authorized by statute. *Alyeska* construed 42 U.S.C. § 2000a–3(b) and *Newman* that " . . . the award should be made to the successful plaintiff absent exceptional circumstances." p. 262, 95 S.Ct. p. 1624. But the opinion continued on the same page "Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for the Congress to determine."[2]

In our case, Congress has determined that an attorney's fee "may" be allowed to "the prevailing party" by the court "in its discretion." And the standard under this Title VII language has been construed under Title II as an award to a prevailing plaintiff absent exceptional circumstances.

The majority supports its denial of the same standard to prevailing defendants as to prevailing plaintiffs in this way: "However, these policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant."[3] I suggest that policy considerations are not matters for the courts but are matters for Congress. Since Congress has provided that a prevailing defendant may recover an attorney's fee for the successful defense of a suit, no reason exists to apply a radically different standard to a prevailing defendant than to a prevailing plaintiff.

Acknowledging that it is the policy of the United States to eliminate discrimination in employment, as well as in other aspects of our national life, how can it be said that it is not the policy of the United States to allow a defendant to recover an attorney's fee for the successful defense of a claim against it which is without merit? A mere colorable claim, although without merit, is easy to come by. The dozens of records which cross our desks each day are proof certain of that fact. The remedies provided under the statute are radical and undoubtedly would not have been imposed had Congress not believed it necessary to achieve the national goal. But the remedies are no less than government by injunction. This is pointed out in the Legislative History, U. S. Code Congressional and Administrative News, 1964, p. 2415. And while government by injunction is to be abhorred, it is no stranger to our system. Dozens of statutes attest to the contrary. I mention this not to criticize the statute, but to point out that, like *Dombrowski,* it is strong medicine. Union contracts entered into in good faith, for example, are casually set aside; and awards against defendants running into the hundreds of thousands or even millions of dollars are not uncommon.

Yet the fact that the remedy is so radical, to me, is not inconsistent with an intent of Congress that an unsuccessful plaintiff be required to pay attorneys' fees under a standard not substantially different from that of an unsuccessful defendant. Especially where the government is the plaintiff, with its limitless resources and sensi-

**2.** I am aware of S. 2278, 94th Congress, 2nd Session, and Senate Report 94–1011.

**3.** While the majority properly gives significance to a policy not to discourage suits under Title VII, it fails to consider any countervailing policy short of bad faith.

tivity to the political winds of the moment, it should not be allowed to escape attorneys' fees by hiding behind a double standard.

The net result we end up with as result of the majority opinion, under a statute which says the court may allow an attorney's fee in its discretion to the prevailing party, is that a prevailing plaintiff is allowed an attorney's fee absent exceptional circumstances, while a prevailing defendant under the same statute is not allowed an attorney's fee unless the plaintiff has prosecuted his action in bad faith. I suggest this is not the level floor the courthouse demands.