Oliver JONES and John Wilchie, Plaintiffs,

v.

**MISSISSIPPI DEPARTMENT OF CORRECTIONS and Morris Thigpen, Commissioner of Corrections, Defendants.**

**Civ. A. No. GC82–115–WK–O.**

United States District Court, N.D. Mississippi, Greenville Division.

Aug. 15, 1985.

Charles Victor McTeer, Willie Griffin, Greenville, Miss., for plaintiffs.

Sidney J. Martin, John Kitchens, Mississippi Atty. Gen. Office, Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

KEADY, District Judge.

On May 21, 1982, plaintiffs, Oliver Jones and John Wilchie, blacks, sued the Mississippi Department of Corrections (MDOC) and Morris Thigpen, Commissioner of Corrections, defendants,[1] to redress claims of racial discrimination in promotion employment practices. Federal jurisdiction was founded upon 28 U.S.C. § 1343(a)(4) for causes of action arising under 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. §§ 1981 and 1983. Plaintiffs sought back pay, reinstatement, injunctive relief, and attorney's fees and costs. Defendants denied the allegations of the complaint and in turn moved for an award of attorney's fees against plaintiffs for defending the action.

After discovery and pretrial conference, the parties entered into a stipulation of facts contained in a pretrial order dated August 31, 1984. The court conducted an evidentiary hearing on August 12 and 13, 1985, at which time the parties appeared personally and by their attorneys, offered oral and documentary evidence, and the court heard argument of counsel. Being advised in the premises, the court now makes findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P., as follows.

## FINDINGS OF FACT

### Oliver Jones

Plaintiff Jones was initially employed by MDOC on July 15, 1974, as a Correctional Officer I (CO–I), the entry level position for employment as a guard at the Mississippi State Penitentiary. Jones's education consisted of two years of junior college, four years at Mississippi Valley State University, and two years in the United States Army, where he attained the rank of sergeant. He successfully completed training prescribed for correctional officers. On December 21, 1979, he applied for and was promoted to the position of Correctional Officer II/Correctional Administrator I (CO–II/CA–I), or sergeant. He served in that capacity until March 9, 1981, when he applied for promotion to the position of Correctional Officer III/Correctional Administrator II (CO–III/CA–II), or lieutenant, for Unit 22. Pursuant to a vacancy announcement for this position, Jones submitted a written application setting forth his educational background but left blank the sections on prior employment or work experience. The minimum job requirements set forth in the vacancy announcement were as follows:

(2) Considerable knowledge of the custody and care of inmates at a state correctional institution; knowledge of

---

**1.** The suit was commenced as a Rule 23 class action on behalf of all past, present and future black applicants for employment and employees of the Mississippi State Department of Corrections. The class action allegations were abandoned by plaintiffs and the court has heretofore ordered that plaintiffs proceed in their individual capacities only. Also dismissed from the original suit are the individual members of the Board of Corrections.

the principles and elements of supervision.

(3) Ability to supervise and direct the work of subordinate officers; to plan work assignments; to command respect and obedience; to act quickly in an emergency; and to judge situations accurately.

(4) Thorough knowledge of the rules and regulations, and policies of the institution or prison where employed.

(P. Ex. 7).

On March 31, 1981, the Mississippi State Personnel Board (Personnel Board) advised Jones by post card that his application was disapproved because of his failure to meet the experience requirement of "1½ years employment as a Correctional Officer II or Correctional Administrator I." (P. Ex. 20). Hence, Jones was not interviewed. The applications of several others were disapproved for the same reason.

Jones made no inquiry of the Personnel Board and took no other steps until he learned that Tony Champion, a white male, had been promoted on July 1, 1981, to the position for which he had applied. During the next month, Jones discussed with James Harris, a penitentiary personnel officer, the fact that the job vacancy announcement had not mentioned a requirement of one and one-half years' experience as sergeant. Harris made inquiry of the State Personnel Board. On instructions from his superior, Hardy James, he prepared a letter stating that, effective July 1, 1981, the minimum qualifications for the lieutenant's position had been revised by the State Personnel Board to require one year and six months' employment as a sergeant to be eligible for a lieutenant's position.

In September 1981, Jones talked to Associate Warden Upchurch and wrote to the Personnel Board complaining that Champion had less education, experience and work seniority than Jones and that the experience requirement set forth in Harris' directive had not been contained in the vacancy announcement. Jones also went to Jackson, where he conferred with J. Terrell May, an official with the State Personnel Board. May offered plaintiff an opportunity to submit supplemental data in order that the Personnel Board might re-evaluate him for the lieutenant's position; however, by that time the vacancy had been filled.

The evidence shows that on June 4, 1980, the Mississippi Classification Commission, the state agency having the authority and responsibility to promulgate policies, rules, and regulations for the hiring and promotion of state employees, including MDOC employees, had established a job description for the position of CA–II, or lieutenant, requiring, among other things, one year and six months' employment as a CO–II or CA–I (i.e., sergeant). On February 1, 1981, by change in Mississippi statute, the functions of the Classification Commission were taken over by the State Personnel Board, which adopted the same policies, rules, and regulations governing the employment, promotion, and termination of state employees, including the job descriptions and minimum requirements which the Classification Commission had previously adopted. No applicant could be accepted for employment or promotion unless he was found to be eligible and was certified by the State Personnel Board. At the time Jones submitted his application, he had served for one year and three months as a sergeant, and thus fell three months short of the minimum qualifications prescribed by the State Personnel Board. "The revision" which Harris referred to as effective July 1, 1981, was merely a restatement of the requirements established in 1980 for the lieutenant's position.

Eddie Lucas, black, the penitentiary warden, reviewed the several applicants for lieutenant who were certified as eligible by the Personnel Board and selected Champion as the applicant most qualified to be recommended to the Commissioner for promotion. Champion had been employed by MDOC since January 1974 and had been named sergeant on July 1, 1978. He had completed the MDOC basic and supervisory training and Mississippi law enforcement officer's training. His personnel file contained evaluations of satisfactory job per-

formance. At the time Champion submitted his application, he had satisfied the one and one-half years' requirement as a sergeant.

On September 9, 1981, Jones filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging racial discrimination because of his failure to be promoted since the position was awarded to a white person less qualified than he. The EEOC on February 18, 1982, issued a right-to-sue letter and advised Jones that it was unable to investigate and conciliate the charge within the time prescribed by law. The present action was timely filed.

At trial Jones testified that he felt that he had been discriminated against on account of race and was of the opinion that white applicants were more readily promoted than blacks. He also testified that he actually served as lieutenant from November 1981 to March 1982 at Unit 24, where he performed the duties of unit administrator but received no increase in salary. He estimated that a lieutenant's compensation was 5% to 10% more than a sergeant's.

The rules and regulations of the State Personnel Board, placed in evidence by Jones, specified in section 3.21(b), dealing with Applicant Processing, that "Incomplete Experience and Training Records shall be returned to individuals with instructions concerning proper completion." Jones did not timely receive instructions from the State Personnel Board on how to complete his application for lieutenant. He had, however, disclosed his work experience in earlier applications. Had such instructions been given, Jones could not have satisfied the prescribed minimum requirement. The court finds as a fact that Jones was not qualified for the lieutenant's position at the time he applied for it in March 1981.

Jones is still employed as sergeant by MDOC. He is of the opinion that his work shift was changed and that he has been harassed in other ways by the penitentiary officials because of this suit.

## John Wilchie

Plaintiff Wilchie was initially employed by MDOC in May 1977 as a CO–I, or guard. On August 24, 1981, he applied for the position of CO–II/CA–I, or sergeant, at Unit 29. He met the minimum requirements, was certified by the State Personnel Board as eligible for promotion, and appeared before a panel for oral interview on September 1, 1981. The promotion panel consisted of James Upchurch, Jerry Upton, and Kenneth Wayne Fleming, whites, and Thomas McDaniel, black. Each of the fifty-two applicants received an individual hearing at which questions were asked about the duties of sergeant and the penitentiary rules and regulations. At the commencement of the interview, James Upchurch, associate warden, handed each member of the panel a list of questions and a sheet headed "Promotion Scoring Profile," specifying nine criteria, to be rated on a score of one to five, enumerated as follows:

1. Attendance and Punctuality
2. Self-improvement efforts
3. Prior performance of duties at MDC [sic]
4. Current job knowledge
5. Knowledge of new grade responsibilities
6. Command presence/leadership qualities
7. Personal appearance and overall manner
8. Educational level
   (1 pt.–Complete high school; 2 pts.–some college; 3 pts.–complete college; 4 pts.–some graduate work; 5 pts.–complete graduate school.)

(P.Ex. 23).

For purposes of scoring each applicant, panel members were instructed that a "five" was the highest possible score in any category, with "one" being the lowest. Panel members were given no standard criteria regarding the meaning of each rating. For example, a "three" might denote a rating of "average" performance in the opinion of one panel member, while it might mean only "fair" in the opinion of

another interviewer. Moreover, the panel members received no guidance as to what criteria they should look for in answers given by the interviewees. Warden Eddie Lucas testified that, in fact, there were really no definitively correct or incorrect answers to the questions.

The evidence shows that each panel member made an independent judgment in each category that resulted in a combined score for Wilchie of 102.

In August 1981, there were twenty-nine positions of lieutenant to be filled in Unit 29, a new inmate facility scheduled to open in the fall of 1981. The State Personnel Board determined from the applications submitted that there were fifty-two applicants, including Wilchie, who were eligible for the positions. All fifty-two applicants were, as Wilchie, granted oral interviews and scored on the basis of their records, the information in their personnel files and their answers to questions. The highest score was 149 and the lowest score 61 (D.Ex. 10). After interviews, Warden Lucas made the selections for recommendation to the commissioner. He selected the twenty-nine applicants with the highest scores. Of this number, nineteen were black and ten were white.

Eventually, four of the twenty-nine selected applicants declined promotion. In an attempt to fill those four vacancies, Lucas reviewed the applicants who ranked thirty to thirty-three numerically on the list. One white and one black, numbers thirty and thirty-two, respectively, were not selected because of problems reflected in their personnel files. Numbers thirty-one and thirty-three, a white and a black, were selected for promotion, thus filling two of the four remaining vacancies. William Turner, black, was the lowest-scoring applicant promoted from the pool of fifty-two, with a score of 107.

Lucas, who held a master's degree and had nine years' experience at the prison before being named warden, testified that he decided that scores below 107 were unsatisfactory; therefore, Wilchie, with a score of 102, was not considered further for promotion. The remaining two vacancies were filled with two blacks from another applicant pool on January 1, 1982.[2] Lucas affirmed that he did not consider race as a factor in the selection process.

No white applicant having a score lower than Wilchie was recommended by Lucas for promotion.

In 1981, MDOC had 1,152 employees, 78% of whom were black, 21% of whom were white and 1% of other race. At that time, MDOC had a warden, who was black, two associate wardens, one white and the other black, a white deputy warden, five white majors and two black majors, six white lieutenants and one black lieutenant, fourteen white sergeants and twelve black sergeants. After Unit 29 was opened in the fall of 1981, the staff was substantially enlarged with seven black lieutenants and five white lieutenants added. Also, thirteen white sergeants and thirty-two black sergeants were added. A large number of the black administrative personnel was assigned to Unit 29.

Plaintiff Wilchie filed a charge with the EEOC on February 16, 1982, alleging that he felt that he was discriminated against because of race since he had four years' experience as a CO–I and met the job requirements and, further, that a white officer, Herman Parker, with less experience was selected for the vacancy. On May 11, 1982, the EEOC made a determination that no reasonable cause was found to believe that the allegations in Wilchie's charge were true and issued the right-to-sue letter. The present action was timely filed.

At trial, Wilchie testified that he had four and one-half years' experience as a

**2.** The statistics reflecting promotions made from Wilchie's applicant pool are as follows:

| Applicants | Numbers Actually Promoted | Percentage Promotion Rate |
|---|---|---|
| Black 39 | 17 | 44.4% |
| White 13 | 10 | 77% |
| 52 | 27 | |

justice court judge, a part-time position he held while serving as a correctional officer, and that he had training at the University of Mississippi Judicial College for Justice Court Judges. He stated that the questions asked of him at the time of interview did not relate to the duties of the job that he was seeking. He felt that Upton, a member of the panel interviewing him, was biased against him since he had filed an incident report against Upton and another officer regarding an assault on an inmate. Wilchie stated that he was never called to testify although an investigator had looked into the matter. Jerry Upton testified that he was unaware of the charge at the time he served on the interview panel and affirmed that race had no part in the scoring he made of Wilchie or other applicants. Upton served only once on the promotion board and was obviously inexperienced in the task to which he had been assigned. Major McDaniel, the black member of the panel, who had veteran service on fifteen to twenty promotion panels, testified impressively as to the questions asked and that the scoring was on the basis of independent perception without prior consultation with other panel members. McDaniel also stated that race played no part in the scores he assigned to Wilchie and other applicants. In Wilchie's case, McDaniel gave Wilchie a score of twenty-nine points as compared to a range of twenty-two to twenty-six points by the white members of the panel.

The court finds as a fact that the scoring procedure of the promotion panel was based in part on objective factors such as punctuality and attendance, education, training, work experience, and seniority of service. It also included subjective factors like current job knowledge, knowledge of new grade responsibilities, command presence, personal appearance, self-improvement efforts, and prior performance of duties at MDOC. Necessarily, a determination in these areas rested upon the perception of each interviewer. The court finds as a fact that the selection process

This indicates a 32.6% selection differential between blacks and whites. The promotion rate

was without racial bias or discriminatory intent. Defendants, however, failed to establish what were the specific questions and whether they were job related and were necessary to fairly assess one's ability to perform the duties of the sergeant's job.

Wilchie contended that a white male, Herman Parker, who had scored 127 in the oral interview, was less qualified than he. According to Warden Lucas, Parker was promoted to sergeant after being employed by MDOC since May 1980 and was promoted to CA–I on October 1, 1981. Although Parker had not received academy training for a correctional officer, that requirement was not in effect at the date of his promotion. He had, however, several times attended the Mississippi Law Enforcement Training Academy, had served four years as a deputy sheriff of Sunflower County, and as the Ruleville police chief. His personnel file reflects that he had received excellent job performance evaluations.

Had Wilchie been promoted to the rank of sergeant, he would have begun work in that position when Unit 29 opened on November 1, 1981. His earnings as a CO–I were $1,081.14 per month. As a sergeant, Wilchie would have earned $1,211.00 per month, amounting to a monthly increase of $129.86. On June 29, 1983, Wilchie was terminated for cause due to matters unrelated to his present suit.

## CONCLUSIONS OF LAW

### Oliver Jones

■ In a disparate treatment case involving allegations of discrimination in promotion employment practices, a Title VII plaintiff carries the initial burden of establishing a prima facie case of discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Generally, the plaintiff must show that (1) he belongs to a group protected by the

for black applicants was 58% that of white applicants.

statute; (2) he was qualified for the position to which he sought promotion; (3) he was not promoted; and (4) after his non-promotion, the employer continued to seek applicants not in plaintiff's protected class or promoted those, having comparable or lesser qualifications, not in plaintiff's protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

■ Once a plaintiff has established a prima facie case, the defendant must attempt rebuttal by clearly articulating a legitimate, nondiscriminatory reason for the employment decision. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. A defendant does not bear the burden of persuading the court that he was actually motivated by the proferred reasons; rather, an employer need only raise a genuine issue of fact as to whether there was illegal discrimination involved in plaintiff's discharge. If an employer satisfies its burden of production, the burden again shifts to the plaintiff to prove that the proffered reasons are not merely pretextual. *Id.* at 254–56, 101 S.Ct. at 1094–1095.

■ When Title VII and 42 U.S.C. § 1983 are used as parallel remedies in a disparate treatment suit, the same substantive elements are applicable for recovery under both statutes. *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 n. 3 (5th Cir.1983). The same principles also apply when Title VII disparate treatment claims are brought in conjunction with claims under 42 U.S.C. § 1981. *Adams v. McDougal,* 695 F.2d 104, 109 (5th Cir.1983).

■ As regards the instant suit, we conclude that Oliver Jones did not present a prima facie case of disparate treatment as defined under Title VII. Clearly, at the time that he applied for promotion to lieutenant, Jones lacked the requisite one year and six months' experience as a sergeant;

therefore, he was not qualified for the position to which he sought promotion. Plaintiff's failure to meet the experience requirement for the lieutenant's position was the sole reason given by the Personnel Board for his non-certification.

Although Jones suggests that the one year and six months' requirement was arbitrary and not job-related, the record is devoid of evidence to support such a contention. A cursory review of the job description for the position of CA–II, or lieutenant, discloses the many responsible duties required of one holding that position and the need for a well-rounded experience in dealing with penitentiary inmates. We hold that the experience requirement was reasonable and was job-related.

Upon plaintiff's failure to establish a prima facie case under Title VII, we must also conclude that no recovery is available under 42 U.S.C. §§ 1981 and 1983.

■ Defendants moved, in the event that judgment was granted in their favor, that plaintiff be required to pay their attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. The motion is not well taken and is denied. Jones's suit was not frivolously brought. To the contrary, it was brought in good faith based on the omission of the one and one-half years' experience requirement from the vacancy announcement which prompted plaintiff's application for a lieutenancy. *See E.E.O.C. v. Christianburg Garment Co., Inc.,* 550 F.2d 949, 951–52 (4th Cir.1977).

### John Wilchie

■ Plaintiff Wilchie attacks the MDOC oral examination and scoring procedure on the basis of its disparate impact upon blacks seeking promotions.[3] To establish a prima facie case of disparate impact as defined under Title VII, a plaintiff must show that the challenged facially neu-

---

**3.** Defendants argued at trial that Wilchie had asserted a disparate treatment, rather than a disparate impact, claim. However, the issues of law listed in the pretrial order do not so limit plaintiff's case, and the court believes that Wilchie has properly stated an impact claim.

tral employment practice operates more harshly on one group than another. *Carpenter v. Stephen F. Austin State University*, 706 F.2d 608, 621 (5th Cir.1983). *See also, Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977). The employer then bears the burden of showing that the specific procedure bears "a demonstrable relationship to successful performance of the jobs for which it was used," *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), for if "an employment practice which operates to exclude [the protected class] cannot be shown to be related to job performance, the practice is prohibited." *Id.* Besides providing evidence of the business necessity of an examination process, and thereby validating it, an employer may also attack the plaintiff's case by showing that the statistical proof is unacceptable. *Johnson v. Uncle Ben's, Inc.*, 628 F.2d 419, 424 (5th Cir.1980), *vacated on other grounds*, 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290 (1981).

■ In the present case, plaintiff has presented a prima facie case under the Title VII disparate impact theory. The statistics for the promotion applicant pool of which Wilchie was a part show a significant 32.6% selection differential between blacks and whites. Also significant is the fact that the promotion rate for black applicants was only 58% that of white applicants. That more blacks than whites were actually promoted does not adversely affect Wilchie's prima facie case, since "bottom-line" adequate minority representation does not validate selection procedures that disproportionately exclude individual members of the protected class. *See Connecticut v. Teal*, 457 U.S. 440, 453–56, 102 S.Ct. 2525, 2533–35, 73 L.Ed.2d 130 (1982).[4] Defendants have not attacked these statistics' acceptability.

■ The court concludes further that the defendants have not met their burden of showing that the oral examination process was job-related. Although Major McDaniel testified that the questions asked during the oral interview were job-related, the evidence of record as a whole highlights serious deficiencies in the interview process used by MDOC. Minimal evidence was available as to what questions were actually asked of each applicant for promotion, thereby making content validation of the process virtually impossible.[5] Moreover, no evidence was presented as to the criterion validity of the questions and scoring methods, i.e., their relationship to job performance.

■ Defendants contend that any deficiencies in the oral examination process are remedied by the warden's independent examination of applicants' scores and personnel files prior to making his recommendations of candidates for promotion. We disagree. Few standards were provided by which the panel members could score interviewees consistently, and no criteria were set out to define proper and improper answers. Warden Lucas admittedly relied heavily on the scores reached in this manner in choosing those applicants who would be promoted. A further infirmity exists in the fact that there was no particular cutoff score for determining who had passed the oral exam and who had failed. No particular correlation was shown between scores lower than 107, the lowest score selected by Warden Lucas, and poor job performance.

Having determined that Wilchie has prevailed on his Title VII disparate impact claim, we conclude that declaratory relief, back pay, and attorney's fees constitute reasonable remedial measures in this case. However, reinstatement will not be granted since Wilchie was terminated for cause unrelated to the instant suit. An award of

---

**4.** The statistics cannot be viewed in terms of how many blacks passed or failed the oral examination as compared to whites since MDOC did not designate any particular cutoff score.

**5.** Content validity concerns the relationship of the interview questions to the knowledge/skills/abilities of an applicant at entry for successful performance of job duties.

back pay is appropriate for the twenty months between November 1, 1981, and June 29, 1983, the date of Wilchie's termination; therefore, the recoverable sum amounts to $2,597.20.[6]

Wilchie has made no showing of disparate treatment and thus is not entitled to relief under 42 U.S.C. §§ 1981 and 1983, which require proof of intentional discrimination.

Let an order issue accordingly.

### JUDGMENT

Pursuant to Memorandum of Decision ·this date issued, it is ORDERED as follows:

1. Plaintiff Oliver Jones take nothing from his suit, and his complaint is hereby DISMISSED with prejudice.

2. Plaintiff John Wilchie shall have of and recover from the defendants, Mississippi Department of Corrections and Morris Thigpen, Commissioner of Corrections, the sum of $2,597.20, together with interest from June 29, 1983, at the rate of 8.18% per annum until paid, and reasonable attorneys' fees against the defendants as the prevailing party, motion therefor to be made pursuant to Local Rule C–13 unless the parties can agree within ten (10) days on the amount of such award. Plaintiff Wilchie is further granted declaratory relief that the use of oral interviews which are not validated or directly related to the job in question as a selection device for promotion of Mississippi Department of Corrections employees is invalid because of racially discriminatory impact. Plaintiff Wilchie, however, is DENIED reinstatement or other injunctive relief.

3. The costs of this action, other than attorneys' fees assessed to plaintiff Wilchie against the defendants, shall be borne as follows: one-half by plaintiff Jones and one-half by defendants.

6. Twenty months × $129.86 (the difference in pay per month between the rank of CO–I and sergeant).